Let's start with 20-3166 Taylor v. LM Insurance Corporation. Mr. McMaster, are you ready to proceed? Yes, Your Honor. May it please the Court, Senior Judge Kelly, Judge Hartz, Judge Baffra, Counsel, my name is Kevin McMaster and I represent Christina and Donald Taylor in this matter. Each person involved in arguing and deciding this case has been trained to think like a lawyer. Law school does not teach the law to the students. It trains people to think different than those, than regular people because they've been trained in the law. A mythical law professor from Harvard explained it very well. A person comes to law school with a skull full of mush and leaves thinking like a lawyer. The Kansas Supreme Court sets a... I'm going to interrupt you. My contract professor at Harvard put it differently. He said, law school sharpens your mind, that is, narrows it. And I don't disagree with that. And it worked. Thanks. But I personally, interacting through law school, when I left and decided to practice law, I understand all my interactions, all my perceptions. Everything I did was different because of my training as a lawyer. And the Kansas Supreme Court sets a standard for interpreting insurance policies. The standard is the ordinary person. It's not someone trained in the law. The Kansas Supreme Court has clearly stated that the duty is to ascertain what the insurer, a reasonable person, understood the policy to mean. Not what a judge, a lawyer, or an insurance professional, trained in the law to some degree or another, believes the policy should mean. And we submit, Your Honor, that no reasonable insurer would expect that if a wayward child were to do something dumb that ended up destroying the home, there'd be no coverage. When Liberty Mutual stands up here and starts to argue the case, the first thing they're going to do is ask you to dive into the middle of the policy. And then look here. And then look there. And then come up to the conclusion that, gee, there's no coverage for this event. We submit that that is focusing on our training as a lawyer. And that it is not reasonable to hand that policy to any insurer and give them anywhere from 10 minutes to 12 hours and try to answer the question. We're not starting from a clean slate here. We have decisions of the State Supreme Court. And at that point, we do use our legal training to determine what that decision means. So tell us how you reconcile your position with the State Supreme Court's. Well, the rule of the State Supreme Court is when an insurance company issues broad coverage, which it did in this case, it must use clear, certain, and unambiguous language to limit the coverage or exclude the coverage. But it's refined that. It's used those general principles in Thomas to interpret an insurance contract. And we would submit that Thomas is wholly inapplicable. Okay. Well, that's your burden here. Right. Thomas is wholly inapplicable because Thomas talks about an intentional acts exclusion. The policy in Thomas said physical injury caused by an intentional act. The Liberty Mutual policy doesn't say property damage caused by an intentional act. But what Liberty Mutual says, any act causing any loss where the loss is intended by the insurer. And that's distinctly different. And we would submit, Your Honor, that the difference there is we're talking about a vastly different way of looking at it from an ordinary person. Causing physical injury because of an intentional act is distinctly different than intending a loss from any act or any loss. Well, isn't your challenge here that you, in fact, acknowledge in your opening brief that Zoe intended to burn the blanket? Yes. Okay. So there's no question, and you acknowledge, even in your opening brief, that there was intent on Zoe's part with regard to the blanket. The blanket is personal property that is covered under the policy. And so she intent, do you disagree with that? No, no. Okay. So, so far we have an intentional act by Zoe to cause a loss to covered personal property. Now, the exclusion is for, why doesn't that decide the case? That doesn't decide the case because the exclusion, the way you described it, the exclusion has to add a whole lot of work. The exclusion talks about any loss because of any act. It doesn't have to be a loss to covered personal property. It just has to be a loss. But she intended. Yes, Judge. Counselor, didn't she, didn't she intend to injure or damage the spread? I believe it's clear that she intended to damage the spread. Did she intend to damage the spread? Yes. Yes or no? Yes. Okay. And then didn't the Kansas Supreme Court say that it's not essential that the home feel the same character and magnitude as that intended? Doesn't that cover the situation completely? No, Judge. Respectfully. That's because the Kansas Supreme Court was talking about an intentional acts exclusion. It was talking about an intentional act, physical injury from an intentional act. And this is not talking about property damage caused by an intentional act. This exclusion specifically puts the emphasis on the intent to cause the loss. And that's got to be the intent to cause the loss. We would submit no. She intended to burn the spread. She wanted to damage the spread with fire, yes. She intended to cause damage and use fire. But the policy doesn't say with intent to cause the loss. It says with the intent to cause a loss. Any loss. The word, it says a loss. Correct. So if she intended to cause a loss, meaning she intended to cause the damage to the spread. Yes. Why doesn't the exclusion apply? Because she didn't intend to cause a loss to the home. She didn't intend to cause an insured loss. What she intended to do was to do something dumb. And if you look at that exclusion and you separate yourself from the standpoint of jumping into the middle of Thomas and the policy, you'll think about it from the standpoint of any loss, any act. Where do you draw the line? What if she intended to burn down her bedroom and it catches fire and the house is lost? Why is that? Do you think that's covered? I think that's a factual issue which needs to decide whether or not it is. Really? What's the fact issue? Did she intend to burn down her room and nothing else? And if she did, then the exclusion applies only to the damage to the bedroom, not the destruction of the whole house. That's your... I think that's an extreme. But likewise, the extreme in the other way with that exclusion is she could have started a pile of leaves on fire. But that's a loss. Well, is that really a loss? Because you use that example or a candle. And if you say burn a candle or you burn leaves, I don't know that the leaves on my property add any value to my property or that the diminution of the value of the reduction of a candle through burning a candle, that's just using property. I don't know that that's causing a loss to the candle. That's just using it. The general definition of loss, I disagree with you, Judge. But let's change that... Eating a hamburger? I mean, is eating a hamburger in my refrigerator, is that causing a loss to covered personal property? I would submit that yes, you're changing the character of it. You're decreasing its value according to the general definitions and the way their exclusion is. And to take the leaf pile a little bit differently. Let's say I have an attached garage that's falling down. And the best way to get it raised so that I can build a new one is to burn it. I mean, there's nothing wrong with me burning my garage. But if it happens to catch the house on fire, according to their exclusion, tying in your bedroom thing, there's no coverage. And that's because it is over-expansive, any loss, any act. And for those reasons, we submit that if you get out of the bushes and the thinking like a lawyer, and you start thinking about how would an insured interpret this exclusion, it's not jump to the Thomas case and drag in the physical acts or intentional acts to cause physical injury. And that's why we respectably submit that Thomas isn't applicable, number one. But if Thomas is applicable, let's look at some of the language the Supreme Court said. The Supreme Court in Thomas specifically said it's adopting this to take into account whether Zoe was substantially certain that the conduct would cause a loss. And you've already acknowledged that in your opening brief. She intended to burn the blanket. That was Judge Kelly's question. Absolutely. But that's all she intended to do. She did not intend to harm her mother, other siblings, the house. She intended to make her dad mad, and she used fire. Let me ask you a question. As I understand it, a logical predicate of your argument is the adding the adjective insured to the noun loss. And you made an allusion, just as you did in your briefs, that it has to exceed the $1,000 deductible. Aren't you the one adding words to the policy when you add the word insured as an adjective to the word loss? Because the word insured doesn't appear in the policy. It says intended to cause a loss. Absolutely. And so if there was a $250 or let's say a $50 deductible, at least this argument you would have to relinquish, right? Because let's say she intended to burn the blanket and it was worth over $50, then she was intending to cause loss to an insured item, right? I understand I don't necessarily agree because, first of all, she didn't intend on burning the whole blanket. She wanted to make her dad mad. She was using fire and was essentially going to burn it. But the problem there is from the standpoint of having to add the words. I'm adding words because any ordinary insured would have to add words to understand it, which makes the language uncertain and therefore ambiguous. And I'd like to reserve some time. Thank you. I'd like to start with the question that Judge Bacharach asked, which was doesn't this decide the case? And the preface to that was the admissions as to her intent to burn the blanket to make her father mad. And, of course, the answer to that question is yes, it does decide the case. We have somewhat unique circumstances here in that we have stipulated facts that show not only actual intent to cause a loss, but inferred intent to cause a loss. The actual intent is simply her language. She intended to burn the blanket to make her father mad. But even without that admission, the inferred intent is as the fire started, she attempted to put it out, which acknowledges that she understood that a spreading fire could cause additional damage. She then left the home understanding that being in the home could be dangerous when you have a spreading fire. And then she called the fire department to put the fire out. So we have a situation where because of the stipulation of facts, and there are no disputed facts here, there were 35 facts, 16 in the appellee's motion for summary judgment and 19 in the appellant's motion for summary judgment, all are incontrovertible. So we have a complete record here of stipulated facts. And in order to find a fact issue, there would have to be a material fact that's been identified and that's been in dispute. In this case, we have no such facts and none have been identified by the appellant. And if this court reviewed the trial court record, there were numerous scenarios discussed concerning the leaf pop. What if you burned a blanket in the ER and then you thought the blanket was out, you stomped on it, and then you brought it in the house, you threw it in a corner, it reignited and burned the house down. So there were numerous scenarios that went through, but as I'm sure the court is aware, and we cite in our briefing the Allied Mutual versus U.S. case, which is out of the District of Kansas, it's not about whether you could come up with some kind of scenario that makes the provision that you're looking at ambiguous. It's about whether under these facts and this policy language, the exclusion applies. And under these facts, all of which are stipulated, and under this language, it does apply. The exclusion does apply. So whether there's some scenario that we can dream up where you might say, okay, well, that language is a little confusing under that scenario. That doesn't create an ambiguity in this instance. And there was discussion with Mr. McMaster about adding language to the policy. He acknowledges he's adding language to the policy. Obviously, you can't add language in order to create an ambiguity. You have to deal with the language that's in front of you. But what appellants have never offered is what is an alternative reading of the language in front of us that is reasonable and would offer the alternative that creates the ambiguity. As the court's aware, an ambiguity is when the language is subject to two different reasonable interpretations. Here we have Appellee's, my client's interpretation of a language which excludes coverage. But nowhere have we ever seen, well, wait, let's look at it this way, using only the language in the policy, and it's reasonable and it reaches a different outcome. And we cited the, in our briefing as well as the trial level, we cited the cases from the other jurisdictions because this scenario, this set of facts under even the tests in the various states of Iowa, Indiana, South Carolina, Ohio, the same facts get the same result, even with slightly different policy language and slightly different tests. And similar to not providing us an alternative interpretation that's reasonable, there's also been no explanation by if Thomas is not the rule, if Thomas versus Benchmark is not the test that the court is to apply to these facts, circumstances, what is the test? They've never cited a case, a competing case from Kansas that would be controlling or potentially controlling that reaches a different outcome. Let me ask you, you know, the elephant in the room is Zoe is apparently mentally troubled, and although she's an adult, you know, many of us have, you know, minor children. Let's say you have a five-year-old child who gets on a chair and gets a pair of matches and burns down, you know, is just playing into play like five-year-old kids do. My five-year-old did. And that child ends up setting fire, you know, under the lack of scrutiny by his or her parents and ends up burning the house down. Wouldn't most insureds with this policy not realize that the five-year-old child is a named insured and that the intentional act, to the extent that a five-year-old could have intent, would ultimately vitiate any coverage at all for that homeowner's policy? I mean, that is awfully a harsh result. Wouldn't that be contrary to the common understanding of most insureds? And I'm saying this, I think any time that there's a lack of coverage for one reason or the other, it's harsh. I mean, that's just the result of it, of you contract for a certain scope of coverage, and if something else happens to you that's not covered, it's harsh. Many of the cases that we've cited, including Thomas v. Benchmark, those are third-party cases. So you have an innocent person out, well, I don't know that the Thomas v. Benchmark plaintiffs were that innocent, but in those instances where you have a driver run into somebody else, that person's injured. You really have harsh consequences because now there's no insurance coverage for those persons injured. So if I come back to it with that scenario, I think you could certainly surmise or come up with some type of circumstance involving a person who unintentionally starts a fire that results in a loss. And under those circumstances, there would be coverage. And I go back into the Allied Mutual case that we cite in our brief, but that's not the circumstances we have here. What we have is an 18-year-old, and I don't think the age is necessarily relevant under the circumstances where you have an admission, a stipulated fact that says she intended to burn the blanket to get a reaction from her father. So if you have a circumstance where you have a 5-year-old who doesn't even know what matches are, and they play with matches, they see a flame, they drop it, and a fire starts, under those circumstances, maybe it doesn't apply. But that circumstance we don't have here. What Shelter v. Williams tells us is the requisite intent or the requisite capacity that's necessary for civil liability is whether the person understands the nature and quality of the acts and intended to cause injury. There can be no doubt under our stipulated facts that Zoe understood the nature and the quality of her acts and intended to cause a loss because she admits to those, or they stipulate to those very facts that show that she had whatever requisite capacity was necessary under Shelter v. Williams. And one point I do want to make, too, is what wasn't addressed at the trial court or by the trial court decision or has not been argued here so far today is that this policy language is actually geared towards the circumstances where you have an intended loss that may become something that's a larger loss like the circumstances we have here. And Thomas v. Benchmark addresses that and says that doesn't matter. Under Kansas law, whether the actual outcome is different or of a different character does not decide the case. But this policy actually has language in it, and I'll read from the actual exclusion. It states, we do not insure for loss caused directly or indirectly by any of the following. That it has intentional loss means any loss arising out of any act committed with the intent to cause a loss. So regardless of the scope of the Thomas v. Benchmark case, the language covers this exact scenario. The Thomas case from South Carolina that we cite, and South Carolina has a narrower rule. On its face, that rule would indicate that you have to intend to cause the actual damage, the scope of the damage. But looking at this language of directly or indirectly, the Auto Owners v. Taylor case out of South Carolina said that covers that. That takes you outside of the need to show intent to cause the overall loss because you've got language that says directly or indirectly. But then we also cover it a second time when we say any loss arising out of. So it can't be disputed that the overall fire arises out of the smaller initial fire. And whether it's directly or indirectly, regardless of whether you attempt to narrow Thomas, you still end up with an exclusion that applies under these circumstances. And again, I think even without, so again we come back to the intent issue which has been stipulated. So unless the court had any questions. Thank you counsel. Thank you. Mr. McMaster, I think you have just under two minutes. Thank you. Thomas doesn't need to be narrowed. Thomas doesn't need to be changed. Thomas needs to be distinguished because it's distinctly different scenarios and distinctly different language. Now, let's talk about this intent to cause a loss being undisputed. It's also undisputed that Zoe tried to put the fire out. It's also undisputed that Zoe claimed she thought she put the fire out. It is undisputed that Zoe did not intend to cause a loss to the home. That's what the insurance was for. How do you deal with the indirectly or directly language? If she intended to cause the loss to the blanket and that indirectly caused all the other losses, why is that not, why does that language not apply? That's not an exclusion, Judge. And we're talking about an ordinary excuse, an ordinary insurer. Well, it says we do not insure for loss caused directly or indirectly by any of the following. Excuse me. Yes. I would submit, Your Honor, that directly and indirectly isn't something that an ordinary insurer would interpret as meaning, oh, gee, if you light a candle, which you intended to do, and it burns down the house, there's no coverage. Because the way you're interpreting it, that's exactly what happens. Well, no, it says if you intended to cause a loss. Right. And that conduct indirectly led to a much greater loss, then it's excluding. Excuse me. But, okay, so you're saying lighting a candle is intentionally causing a loss. Correct. According to the ordinary definition. Do you really, well, do you really think the ordinary person would think that you're intending to cause a loss when you light a candle? Yes. Okay. Just like you intend to cause a loss if you light a cigarette or a cigar. Or eat a hamburger. Okay. Thank you. Your time has expired. Thank you. Thank you. Case is submitted. Counsel are excused.